IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NATIONS LENDING CORPORATION,** | Case No. 1:22-cv-02102-PAB |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| **CHRISTOPHER PATILLE,** | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This case is before the Court on Plaintiff Nations Lending Corporation's ("NLC") Motion to Dismiss Counterclaim filed on June 15, 2023. (Doc. No. 16.) Defendant Christopher Patille ("Patille") filed a Brief in Opposition on July 17, 2023. (Doc. No. 18.) On July 31, 2023, NLC filed a Reply. (Doc. No. 20.)

For the following reasons, the Court GRANTS NLC's Motion to Dismiss.

**I.  Procedural History**

On July 1, 2022, NLC filed a lawsuit against Patille in the Cuyahoga County Court of Common Pleas, alleging state law claims for breach of contract, promissory estoppel, and unjust enrichment, which arose from Patille's refusal to return a $200,000 sign-on bonus. (Doc. No. 1-2, ¶¶ 9-11.) On November 21, 2022, Patille removed the lawsuit to this Court on the basis of diversity jurisdiction. (Doc. No. 1.) On December 12, 2022, NLC filed a First Amended Complaint, in which it asserted the same three claims against Patille. (Doc. No. 4.)

On January 6, 2023, Patille filed a Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction. (Doc. No. 7.) On May 11, 2023, the Court denied Patille's Motion to

Dismiss, concluding it has personal jurisdiction and that NLC's First Amended Complaint stated plausible claims for breach of contract and unjust enrichment. (Doc. No. 9.)

On May 25, 2023, Patille filed an Answer to NLC's First Amended Complaint and a Counterclaim for fraudulent/negligent misrepresentation (Count I), promissory estoppel (Count II), and tortious interference with a business relationship (Count III). (Doc. No. 12, ¶¶ 43-67.) On June 14, 2023, the Court held a Case Management Conference and set case deadlines. (Doc. Nos. 14, 15.) The following day, NLC filed the instant Motion to Dismiss Patille's Counterclaim. (Doc. No. 16.) On July 17, 2023, Patille filed a Brief in Opposition. (Doc. No. 18.) And on July 31, 2023, NLC filed a Reply. (Doc. No. 20.)

## II.   Factual Allegations

Patille sets forth the following factual allegations in his Counterclaim. (Doc. No. 12.) In January 2021, NLC began to "aggressively recruit[]" Patille to leave his then-employer and work for NLC. (*Id*. at ¶ 4.) In May and June 2021, Patille and NLC discussed and negotiated NLC opening a residential mortgage branch in Delaware that would focus on "new purchase" mortgages. (*Id*. at ¶ 5.) NLC's primary activity was to refinance loans and it had a limited new purchase mortgage department, in limited geographic areas. (*Id.* at ¶¶ 6, 8.) Patille's business was primarily new purchase mortgages, and NLC recruited Patille so that it could expand into that market and grow a new purchase department for NLC in the Delaware region. (*Id*. at ¶¶ 7, 8.) Patille advised NLC that he could recruit highly trained mortgage brokers to build the foundation of a team at NLC's proposed Delaware branch capable of handling a high volume of loan applications, and that he already had a large book of business, including referral resources of several real estate brokers who highly recommended him and his team for new purchase mortgages. (*Id*. at ¶¶ 9-10.) NLC "promised and

2

materially represented" to Patille that it could and would provide him and his team with sufficient support for underwriting and ensuring loans for residential property purchases were properly funded within the time constrains required for purchase money mortgages. (*Id*. at ¶ 12.)

NLC provided Patille a pro forma document so that Patille could estimate his likely earnings. (*Id*. at ¶ 14.) NLC knew that for the pro forma to be accurate, it would need to provide Patille and his team the promised support. (*Id*.) Patille completed the pro forma and gave it to NLC. (*Id*. at ¶ 15.) Without the promises and material representations of sufficient support for underwriting and ensuring loans for residential property purchases were properly funded, Patille would have never considered employment with NLC, and but for these material representations, it would have been impossible for Patille and his team to service the residential property purchase loans. (*Id.* ¶¶ 16, 17.) On September 3, 2021, "[i]n material reliance of [sic] NLC's promises and representations, Patille executed NLC's employment agreement." (*Id*. at ¶ 18; Ex. A.) Patille resigned from his position and recruited "numerous" highly qualified mortgage brokers and support staff to build the Delaware branch for NLC. (*Id*. at ¶ 20.)

The Employment Agreement provided that NLC would pay Patille a base salary and a commission for each "eligible loan" he "originated." (*Id*. at ¶ 21; Ex. A.) It also provided that "Patille was to be paid an additional commission on any funded files from the Delaware branch, at a rate of 10 basis points." (*Id*. at ¶ 22; Ex. A.)

On September 7, 2021, Patille began his employment with NLC as a "Producing Branch Manager." (*Id*. at ¶ 23.) "By November 2021, it was clear that NLC did not have the systems, infrastructure, policies or procedures in place to service a new purchase lending practice with the number of loan officers in the Delaware branch." (*Id*. at ¶ 25.) NLC made "little to no effort . . . to

3

accommodate a new purchase practice and the then-existing pipeline of work." (*Id*. at ¶ 26.) This caused the loan applications that Patille and his team sold to be "suspended" and caused "closings to be delayed." (*Id*. at ¶ 27.) Many of those, at least 20, that were delayed ended up canceling their loan applications and taking their business elsewhere. (*Id*. at ¶ 27.)

In Patille's last three months of employment, he and his team lost at least 12 loans due to NLC's failures, which amounted to $3 million in lost sales and almost $100,000 in lost commissions. (*Id*. at ¶ 28.) NLC's failures also "resulted in threats and exposed Patille to claims of professional negligence." (*Id*. at ¶ 31.) Additionally, Patille lost referral sources, including one real estate broker and his agency that provided 50 percent of Patille's referrals at the time. (*Id*. at ¶ 35.)

In all, "Patille lost over 70% of his book business, which equated to a loss of approximately $40 [million] in annual business," and he suffered "irreparabl[e] damage[]" to his "excellent and inspiring reputation." (*Id*. at ¶¶ 36, 38.)

On May 19, 2022, for these reasons, Patille resigned from NLC. (*Id*. at ¶ 41.)

### III.   Law and Analysis

NLC moves to dismiss Patille's counterclaims under Federal Rule of Civil Procedure 12(b)(6). First, NLC argues that Patille's counterclaim for promissory estoppel is barred due to the valid and enforceable Employment Agreement between the parties. (Doc. No. 16, p. 5.) Second, NLC contends that Patille's fraudulent/negligent misrepresentation counterclaim cannot be asserted in lieu of a breach of contract claim, and it is not plead with particularity as Federal Rule of Civil Procedure 9(b) requires. (*Id*. at p. 6.) Third and finally, NLC argues that Patille's tortious interference counterclaim is insufficiently plead, and NLC cannot interfere with its own business. (*Id*. at pp. 16, 18.)

The Court will address NLC's three arguments in order below.

4

### A. Rule 12(b)(6) Standard

Under Rule 12(b)(6), the Court accepts Patille's factual allegations as true and construes the Counterclaim in the light most favorable to Patille. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a

notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Promissory Estoppel (Count II)

NLC argues that, under Ohio law, the existence of a written contract—the Employment Agreement—bars Patille's promissory estoppel claim. (Doc. No. 16, p. 5.) Moreover, NLC contends that promissory estoppel does not apply to any oral promises NLC allegedly made to Patille before the parties signed the Employment Agreement. (*Id*.) Lastly, NLC argues that the Employment Agreement contains an integration clause, in which Patille agreed he was not relying on any other representations when he entered into the Employment Agreement. (*Id*. at p. 6.)

Patille responds that NLC's alleged promises induced Patille to sign the Employment Agreement, but they were never intended to be in the Agreement itself. (Doc. No. 18, p. 3.) Additionally, Patille argues that these alleged promises did not relate to the subject matter of the Employment Agreement, and therefore the Agreement's integration clause does not bar them. (*Id*. at p. 4.)

For the following reasons, the Court concludes that the Employment Agreement bars Patille's promissory estoppel counterclaim.

Under Ohio law, a promissory estoppel claim requires: "[1] a promise, clear and unambiguous in its terms; [2] reliance [on the promise] by the party to whom the promise is made; [3] that the reliance was reasonable and foreseeable; and [4] that the party claiming estoppel was injured by the reliance." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 503 (6th Cir. 2003) (quoting *Rigby v. Fallsway Equip. Co.*, 779 N.E.2d 1056, 1061 (Ohio App. 9th Dist. 2002)). "[W]here the parties have

an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 583 (6th Cir. 2007).

Patille alleges that NLC promised him "that it was capable of providing, and would provide, Patille and his team with sufficient support for underwriting and ensuring loans for residential property purchases were properly funded within the time constraints required for purchase money mortgages." (Doc. No. 12, ¶ 13.) Moreover, NLC made these promises "to persuade Patille to join NLC." (*Id*. at ¶ 12.) In other words, Patille alleges that NLC made oral promises *prior* to the parties signing the Employment Agreement that induced Patille to sign the Agreement.

"Promissory estoppel does not apply to oral statements made prior to the written contract, where the contract covers the same subject matter." *Borowski v. State Chem. Mfg. Co.*, 647 N.E.2d 230, 235 (Ohio App. 8th Dist. 1994). So, the question is whether NLC's alleged oral promises cover the same subject matter as the Employment Agreement. Patille argues that they do not. (Doc. No. 18, p. 4.) He focuses on the first half of NLC's alleged promise—that is, that NLC could and would provide Patille and his team with "sufficient support" to properly underwrite and timely fund mortgages. (*Id*.) NLC counters that the oral promises do cover the same subject matter because the Employment Agreement contains numerous clauses that define Patille's compensation by the number of funded loans Patille produced. (Doc. No. 20, pp. 4-5.)

Patille defines "subject matter" too narrowly. The subject matter of the Employment Agreement is Patille's employment with NLC. The Agreement details Patille's duties and describes the compensation NLC would pay him. (Doc. No. 4-1, Page ID # 66.) Patille seeks to use NLC's alleged prior oral promises to add to NLC's obligations under the Employment Agreement. More specifically, Patille contends that in addition to compensation, NLC also owed him "sufficient

7

support." (Doc. No. 12, ¶ 12.) However, the parol evidence rule "prohibits a party to a written contract from varying, contradicting, or adding to the terms of the written contract with evidence of prior contemporaneous agreements, either written or oral." *Worthington v. Speedway SuperAmerica LLC*, 2004 Ohio App. LEXIS 4592 at *8 (Ohio App. 4th Dist. Sept. 20, 2004) (citing *Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1080 (Ohio 1996)). Even if NLC did promise Patille "sufficient support," the parol evidence rule prevents Patille from enforcing that promise against NLC.

Furthermore, a contract's "integration clause is essentially a contract's embodiment of the parole evidence rule." *Boyd v. Archdiocese of Cincinnati*, 2015 Ohio App. LEXIS at *13-14 (Ohio App. 2d Dist. Apr. 10, 2015). The Employment Agreement contains such an integration clause at paragraph 13.A, which provides, in relevant part:

> This Agreement and its Supplements sets [sic] forth the entire understanding and agreement of the parties hereto and fully supersedes any and all prior or contemporaneous agreements or understandings between the parties with respect to the subject matter hereof. . . . **Employee is not relying upon any other representations regarding these subjects in entering into this agreement**.

(Doc. No. 4-1, Page ID #66) (emphasis added). Patille therefore agreed in the Employment Agreement that no other promise from NLC induced him to enter into the Agreement. He cannot now claim that he did in fact rely on a prior oral promise and seek to enforce that promise against NLC.

Therefore, Patille has failed to state a plausible counterclaim for promissory estoppel because the Employment Agreement is an enforceable written contract that covers the same subject matter as NLC's alleged promises, and because the parol evidence rule, and the Employment Agreement's integration clause prohibit Patille from adding to the terms of the Agreement.

8

Accordingly, the Court grants NLC's Motion to Dismiss as to Patille's promissory estoppel counterclaim.

### C. Fraudulent/Negligent Misrepresentation (Count I)

NLC next argues that Patille's fraudulent/negligent misrepresentation counterclaim fails for four reasons: (1) it is unduly vague under Federal Rule of Civil Procedure 9(b), (2) it is barred because it concerns the same subject matter as the Employment Agreement, (3) it is predicated on future predictions or projections of future performance, and (4) it is barred by Ohio's economic loss doctrine. (Doc. No. 16, p. 8.)

Patille responds that (1) his counterclaim "puts NLC on fair notice of the fraudulent misrepresentations," (2) the misrepresentations are not related to and do not arise from the subject matter of the Employment Agreement, (3) the damages he claims relate to actual losses, and (4) NLC breached a duty independent of the Employment Agreement, so the economic loss rule does not apply. (Doc. No. 18, pp. 6, 9, 10.)

For the following reasons, the Court concludes that Patille plead his fraudulent misrepresentation counterclaim with insufficient particularity.

#### 1. Negligent or Fraudulent Misrepresentation

As an initial matter, Patille labels his counterclaim as "Fraudulent/Negligent Misrepresentation." And he alleges that "[e]ven assuming arguendo that some or all of the misrepresentations were made negligently rather than intentionally, these misrepresentations nonetheless were made under the circumstances in which it would be just to require NLC to assume responsibility for" his damages. (Doc. No. 12, ¶ 54.)

Under Ohio law, the elements for negligent misrepresentation are:

> 1) one who, in the course of his or her business, profession or employment, or in any other transaction in which he or she has a pecuniary interest, 2) supplies false information for the guidance of others in their business transactions, 3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, 4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information.

*Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 200 N.E.3d 652, 669 (Ohio App. 10th Dist. 2022) (internal quotation marks and citation omitted).  The cause of action requires "(1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant."  *Nichols v. Ryder Truck Rental*, 1994 WL 285000 at *11 (Ohio App. 8th Dist. June 23, 1994).  The class of persons "who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks."  *Malek v. Eresearch Tech. Inc.*, 199 N.E.3d 573, 584 (Ohio App. 8th Dist. 2022) (quoting *Nichols*, 1994 WL 285000 at *11-12).  That is because these persons have "a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm."  *Universal Contracting Corp. v. Aug*, 2004 Ohio App. LEXIS 6661 at *10 (Ohio App. 1st Dist. Dec. 30, 2004) (citing *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 214 (Ohio 1982) and *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 837 (Ohio 1989)).

Patille has not alleged that NLC is in the business of supplying information; Patille has not alleged that he sought guidance from NLC with respect to his own business transactions; Patille has not alleged that NLC had a duty to provide him with accurate information; and Patille has not alleged that NLC breached such a duty by supplying him with false information.  As such, Patille has failed to allege the elements of negligent misrepresentation, and the Court will only consider his counterclaim as one for fraudulent misrepresentation.

"The elements of a cause of action for fraudulent misrepresentation are: (1) a material false misrepresentation; (2) knowingly made; (3) with intent of misleading another into relying on it; (4) reasonable reliance on the misrepresentation; and (5) injury resulting from the reliance." *Isaac v. Alabanza Corp.*, 2007 Ohio App. LEXIS 1287 at *10 (Ohio App. 7th Dist. Mar. 22, 2007) (citing *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987)).

2. **Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This means Patille, "at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he . . . relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003) (citation and internal quotation marks omitted). The "overarching purpose" of this requirement "is to ensure that a defendant possesses sufficient information to respond to an allegation of fraud." *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

NLC argues that Patille failed to allege the time, place, and content of the material representations with sufficient particularity. (Doc. No. 16, pp. 8-10.) Patille counters that he alleged "that the misrepresentations occurred . . . from January 2021 through June 2021." (Doc. No. 18, p. 6 (citing Doc. No. 12, ¶¶ 5, 8, 12-20).) He further claims that "plead[ing] the exact person who made each representation and the exact wording of the misrepresentation, . . . is a burden simply not required by the rules." (Doc. No. 18, p. 7.) For the following reasons, the Court concludes Patille did not allege the fraudulent misrepresentations with sufficient particularity.

First, the only times Patille alleges in his Counterclaim are January, May, June, and September 2021. (Doc. No. 12, ¶¶ 4, 5, 8, 12-20.) And he does not tie any of these general times to any alleged misrepresentation. Stated differently, Patille alleges that NLC made the misrepresentations sometime between when it first contacted Patille—January 2021—and when it ultimately hired him—September 2021. Rule 9(b) does not require "omniscience." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988). But Patille does not need to be omniscient to allege when NLC made its alleged promises to him with more specificity than an eight-month period covering the entire time the parties negotiated his employment. *See Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1059 (N.D. Ohio 2014) (concluding that an allegation of a "several month time span encompassed by 'Spring, 2013,' is not particular."); *cf. Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 601 (N.D. Ohio 2009) (finding plaintiff plead fraud with sufficient particularity because, in part, evidence of the fraud was "uniquely in [the defendant's] possession").

Second, Patille's Counterclaim fails to allege a "place," and thereby fails to meet Rule 9(b)'s particularity requirements. *See Kardol Quality Prods., LLC v. Phx. Resins, Inc.*, 2015 U.S. Dist. LEXIS 34404 at *4-5 (S.D. Ohio Mar. 19, 2015) ("Given that negotiations can occur in a variety of formats, it is necessary for Kardol to be informed as to the particular location and/or means by which the alleged fraudulent statement was made to address the counterclaim in a meaningful way."). Patille, in his own Declaration submitted in support of his Motion to Dismiss, declares that his negotiations with NLC occurred over the phone, Zoom, Teams, and in-person in Cleveland, Ohio. (Doc. No. 7-4, ¶¶ 12, 14, 17, 18, 25.) So again, Patille need not be "omniscient" to allege a "place" with the required particularity.

12

Third and lastly, Patille fails to identify who made the misrepresentations. Patille alleges that "NLC" made the fraudulent misrepresentations, but NLC is a corporation with any number of officers and employees. (Doc. No. 20, ¶¶ 2, 46.) Corporations speak (and make alleged fraudulent misrepresentations) through its agents, but Patille does not name a single individual anywhere in his Counterclaim. The Court again refers to Patille's own Declaration wherein he identifies by name and job title multiple managers, officers, etc. of NLC who he spoke with during his negotiations with NLC. (Doc. No. 7-4, ¶¶ 12, 17, 18.) Patille's silence on who made the alleged misrepresentations is another reason his counterclaim fails to meet Rule 9(b)'s requirements.[1] *See William Beaumont Hosp. Sys. v. Morgan Stanley & Co.*, LLC, 677 F. App'x 979, 984 (6th Cir. 2017) (To survive Rule 9(b) "[the plaintiff] would need to prove the names of representatives who participated in the conversations and ran the presentations from which [the plaintiff's] allegations of misrepresentation arise."); *see also Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, 2007 U.S. Dist. LEXIS 72286 at *17 (E.D. Ky. Sep. 27, 2007) ("Fatal to its claim for fraudulent misrepresentation is [the defendant's] failure to identify the 'agents' of the hospital who made the alleged representations.").

Because Patille has failed to allege his fraudulent misrepresentation counterclaim with sufficient particularity, the Court grants NLC's Motion to Dismiss it.

---

[1] NLC also argues that Patille fails to sufficiently allege the content of the alleged misrepresentations. (Doc. No. 16, pp. 9-10.) NLC contends that "Patille simply alleges his impression of NLC's employment negotiation discussions." (*Id*. at p. 9.) But Patille alleges more than an "impression"—he alleges a promise of a sufficient "support system" to underwrite and properly fund residential property purchase loans. If he could tie this promise to a specific time, a specific means of communication, and a specific speaker, it would arguably put NLC on "sufficient notice of the misrepresentation," and allow it to answer Patille's counterclaim for fraud. *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (citation omitted).

### 3. The Employment Agreement

NLC also argues that Patille's fraudulent misrepresentation counterclaim is barred because it concerns the same subject matter as the Employment Agreement. (Doc. No. 16, p. 11.) Specifically, NLC argues that its alleged misrepresentations relate to its ability to support Patille, "which would impact Patille's entitlement to commission, [and] would naturally fall within the scope of the Employment Agreement." (*Id*. at p. 12.) Patille responds that "NLC made material misrepresentations to induce Patille to execute the employment agreement." (Doc. No. 18, p. 8.)

The Court notes that Patille has not asserted a claim for fraudulent *inducement*. But NLC acknowledges, and the Court agrees, that "his allegations could be construed as such." (Doc. No. 16, p. 12).[2]

"[A] fraud claim may not be maintained where the alleged fraud is directly contradicted by a signed writing." *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 680 (Ohio App. 10th Dist. 2000) (citing *Marion Prod. Credit Ass'n v. Cochran*, 533 N.E.2d 325, 334 (Ohio 1988)). The Employment Agreement contains no clause concerning the "sufficient support" it would provide Patille for underwriting and funding loans. So Patille's fraud allegation does not *directly* contradict the Employment Agreement. Moreover, while the parol evidence rule prevents Patille from adding a clause of "sufficient support" to the Employment Agreement under his promissory estoppel theory, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Katz, Teller, Brant & Hild LPA v. Farra*, 2011 WL

---

[2] Additionally, the elements for fraudulent misrepresentation and fraudulent inducement "are essentially the same." *Doctor v. Marucci*, 2013 WL 6880935 at *5 (Ohio App. 11th Dist. Dec. 13, 2013) (citing *Deutsche Bank Nat'l Tr. Co. v. Pevarski*, 932 N.E.2d 887, 899 (Ohip App. 4th Dist. 2010)) (also concluding that "[t]he conflation of the two causes of action is inconsequential").

1591286 at * 12 (Ohio App. 2d Dist. Apr. 22, 2011) (quoting *Galmish v. Cicchini*, 734 N.E.2d 782, 789 (Ohio 2000).

Accordingly, the Employment Agreement does not bar Patille's fraudulent misrepresentation/inducement counterclaim.

### 4. Future Promise

NLC next argues that Patille's allegations regarding the pro forma document it provided Patille, which estimated Patille's likely earnings, means that Patille's fraudulent misrepresentation counterclaim "is predicated on predictions or projections of future performance." (Doc. No. 16, pp. 13-14.) Patille responds that he included the pro forma in his Counterclaim to "illustrat[e] [NLC's] complete disregard for having the proper underwriting and loan servicing support system in place Patille's team would necessitate." (Doc. No. 18, p. 9.)

Patille's allegation, when viewed in the light most favorable to Patille, is that NLC promised to provide sufficient support while knowing that "it did not have the experience or ability" to fulfill that promise. (Doc. No. 12, ¶ 48.) "A promise made with a present intention not to perform constitutes a misrepresentation of existing fact even if the promised performance is to occur in the future." *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (citing *Link v. Leadworks Corp.*, 607 N.E.2d 1140, 1145 (Ohio App. 8th Dist. 1992)). So, if NLC promised to provide future support to Patille, which would have impacted Patille's future compensation, NLC's alleged present intention to not fulfill that promise constitutes a fraudulent misrepresentation. Accordingly, Patille's fraudulent misrepresentation counterclaim does not fail for this reason.

### 5. Economic Loss Doctrine

Finally, NLC argues that the economic loss doctrine prevents Patille's negligent misrepresentation counterclaim. (Doc. No. 16, p. 14.) The Sixth Circuit has explained Ohio's economic loss doctrine as follows:

> First, it bars a plaintiff from recovering in negligence for purely economic damages. *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). Second, it prevents a plaintiff from recovering in tort for the conduct of a defendant that violates only a contractual duty rather than any free-standing duty of care. *Id*.

*Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 496 (6th Cir. 2019).

As the Court noted above, Patille has not set forth a counterclaim for negligent misrepresentation. And even if he had, negligent misrepresentation is an exception to the economic loss doctrine. *PLC Corp. v. Brandywine Recovery Inc.*, 2015 U.S. Dist. LEXIS 136264 at *20 (N.D. Ohio Oct. 6, 2015) (citing *Universal Contracting Corp.*, 2004 Ohio App. LEXIS 6661 at *10); *see also Haddon View Inv. Co.*, 436 N.E.2d at 214. Moreover, to the extent that the Court construes Patille's claim as alleging fraudulent inducement, it likewise is an exception to the economic loss doctrine. *PLC Corp.*, 2015 U.S. Dist. LEXIS 136264 at *20 (citing *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 774 (N.D. Ohio 2004)); *see also Gentox Med. Servs. v. Abdelwahab*, 2021 U.S. Dist. LEXIS 245949 at *8 (N.D. Ohio Dec. 27, 2021).

As such, the economic loss doctrine does not bar Patille's fraudulent/negligent misrepresentation/inducement counterclaim.

### D. Tortious Interference With a Business Relationship (Count III)

Lastly, NLC argues that Patille fails to state a claim for tortious interference with a business relationship because his allegations of intent are speculative, NLC cannot interfere with its own business, and the Employment Agreement bars the claim. (Doc. No. 16, pp. 17-19.) Patille responds

that he can plead intent generally, the claim does not arise out of the Employment agreement, and the relevant business relationship is with Patille's referral sources. (Doc. No. 18, p. 12.) NLC replies that because Patille was NLC's employee, "NLC was necessarily a party to the relationships between Patille and his referral sources/customers." (Doc. No. 20, pp. 13-14.)

The elements for a tortious interference with a business relationship claim are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, 2021 U.S. App. LEXIS 34150 at *9-10 (6th Cir. Nov. 15, 2021) (citation omitted.)

The Court will start and end with NLC's argument that it cannot interfere with its own business relationship. The Court accepts as true Patille's allegation that the relevant "business relationship" is Patille's relationship with his referral sources. (Doc. No. 12, ¶¶ 65, 67.) Patille had these business relationships prior to working for NLC (*id*. at ¶ 64), but the termination of those relationships occurred *after* NLC hired him. (*Id*. at ¶ 65.) The timing is important. NLC argues that once it hired Patille, it became a party to Patille's business relationship with his referral sources and customers. (Doc. No. 20, pp. 13-14.) The Ohio Supreme Court has not addressed the issue of whether a party can tortiously interfere with its own business relationships. But at least one Ohio appellate court has ruled that a party cannot. *Dolan v. City of Glouster*, 879 N.E.2d 838, 848 (Ohio App. 4th Dist. 2007). And at least four courts in this district have cited *Dolan* and come to the same conclusion. *See Kenyon v. Union Home Mortg. Corp.,* 581 F. Supp. 3d 951, 957 (N.D. Ohio 2022) (Calabrese, J.); *Carter v. PJS of Parma, Inc.*, 2016 U.S. Dist. LEXIS 45341 at *10 (N.D. Ohio Apr. 4, 2016) (Gaughan, J.); *Mumaw v. Ohio State Racing Comm'n*, 2015 U.S. Dist. LEXIS 41735 at *24 (N.D.

17

Ohio Mar. 31, 2015) (Boyko, J.); *O'Neil v. Tech. Loss Adjustment & Appraisal*, 2009 U.S. Dist. LEXIS 147939 at *8 (N.D. Ohio Mar. 30, 2009) (Oliver, J.).

The factual allegations in this case are nearly identical to those in *Kenyon*. In that case, the plaintiff, a mortgage loan originator, accepted employment with the defendant, a mortgage lender. *Kenyon*, 581 F. Supp. at 954. The plaintiff signed an employment agreement and a covenant not to compete; however, he resigned approximately a year later and sued his former employer. *Id*. After the parties reached a settlement agreement, the plaintiff resumed working for the defendant. *Id*. After returning, the plaintiff alleged that he "experienced retaliation and hostile working conditions," including, most relevantly, that the defendant "reassigned or redirected to other mortgage loan originators [the plaintiff's] customers and business contacts, most of who [the plaintiff] had obtained in his career before his employment with [the defendant]." *Id*. The plaintiff sued again, alleging, in part, that the defendant tortiously interfered with his business relationships. *Id*. at 955.

The defendant moved for judgment on the pleadings. *Id*. The district court recognized that the Ohio Supreme Court had yet to rule on this issue, cited *Dolan* and two of the above district court cases, and concluded that "as a matter of Ohio law . . . [the defendant] cannot tortiously interfere with its own business relationships." *Id*. at 956-57.

The Court finds *Kenyon* and *Dolan* persuasive. Patille's Employment Agreement is explicit that when NLC hired Patille, Patille became NLC's employee. (*See* Doc. No. 4-1.) And Patille represented to NLC that "he . . . is not working for or performing services on behalf of [himself] or any other individual or business entity, whether as an employee or independent contractor, except as expressly authorized in writing by [NLC.]" (*Id*. at ¶ 4.) Patille alleges that over 20 loans were not "properly handled . . . due to the failures by NLC" and that he lost referral sources as a result. (Doc.

18

No. 12, ¶¶ 66, 67.) But since Patille was NLC's employee at the time, NLC was also a party or third-party beneficiary of Patille's referral sources, and NLC too suffered damages from losing them. *See Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 757 (S.D. Ohio 2013) ("[A] claim for tortious interference of business relationships can only be asserted against 'outsiders' or 'strangers to the business relationship.'"). Accordingly, this Court concludes that, as a matter of Ohio law, NLC cannot tortiously interfere with its own business relationships. *See Dolan*, 879 N.E.2d at 848; *Kenyon*, 581 F. Supp. 3d at 957. The Court thus grants NLC's Motion to Dismiss for failure to state a claim as to Patille's tortious interference counterclaim.

### IV. Conclusion

For the reasons set forth above, the Court GRANTS NLC's Motion to Dismiss Counterclaim. (Doc. No. 16.)

**IT IS SO ORDERED.**

      *s/Pamela A. Barker*
PAMELA A. BARKER
Date: August 23, 2023      U. S. DISTRICT JUDGE